E-FILED
Friday, 15 May, 2009  09:13:25 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| WILLIAM SHAFFER,                       ) | |
|                                 ) | |
|     Plaintiff,                               ) | |
|                                 ) | |
|     v.                                       ) | NO. 08-3006 |
|                                 ) | |
| ALTER TRADING CORPORATION,   ) | |
|                                 ) | |
|     Defendant.                            ) | |

## <u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

Plaintiff William Shaffer ("Shaffer") brings this diversity suit against Defendant Alter Trading Corporation ("Alter") and seeks to recover for injuries sustained from cutting into a live power line.

Alter now moves for summary judgment.

Applying Illinois law, this Court grants the motion in part and denies it in part.

## I.  BACKGROUND

Alter is an Iowa corporation with its principal place of business in Missouri.  Plaintiff William Shaffer, a resident of Adams County, Illinois,

is an employee of Shaffer & Sons Construction, Inc.

Some time prior to September 2004, Alter entered into an oral contract with Shaffer & Sons.  Under the agreement, Shaffer & Sons was obligated to remove scrap, including equipment and metal, from a property known as the Old Celotex building, and deliver that scrap to an Alter facility.

Alter did not assist Shaffer & Sons with the project beyond identifying what machinery and metal was to be removed from the building. Alter was not obligated to supply any equipment for the job and, with the exception of a few minor items, did not do so.  Nor did Alter specify what equipment should be used but left such decisions to Shaffer & Sons, which used its own equipment, including its own electricity testers.

Prior to starting work, Shaffer walked through the Celotex building with two Alter employees.  He could see electrical lines that were cut and hanging as well as missing transformer panels.  The Alter employees warned Shaffer to be careful and check the electricity.  Shaffer passed this warning on to a subcontractor of Shaffer & Sons.

Shaffer knew that the electricity was off in the basement, but was unsure whether it was on in other parts of the building.  According to Shaffer, the electricity in a building would normally be off during such stripping projects.  As such, Shaffer brought his own generators to the work site.  Learning that Alter intended to leave the power on in parts of the building, Shaffer claims he made several oral requests to Alter employees that the power be shut off.  Alter, however, refused to shut the power down because doing so would result in power loss to a nearby building they were trying to sell.

In light of this refusal, Shaffer devised another way to handle the power lines.  Although he lacked any prior electrical experience, Shaffer brought in an electricity tester to determine whether any hanging wires were live.  If the wire were dead, Shaffer would cut it and pull it so that it could not be turned back on.  Alter was allegedly aware that Shaffer was using his tester in this way.

On September 9, 2004, two months into the project, Shaffer was injured in an electrical accident.  On that morning, the employee of a sub-

contractor, Alan Miller, cut a wire with a torch.  The wire swung, struck a beam, and arched.  Shaffer tested a wire in an adjoining transformer and his tester revealed it to be dead.  He then erroneously traced the electrical line up to an electrical box on the roof.

After climbing up to the roof alone, Shaffer attempted to test the line inside the electrical box.  Unknown to Shaffer, wires inside the unmarked box carried in excess of 4000 volts.  According to Shaffer's expert, such a box should have carried a high voltage warning, but it did not.  Shaffer's tester, designed only for testing wires carrying under 1000 volts, showed the wire to be dead when, in fact, it was still live.  Relying on the tester's reading, Shaffer attempted to cut the line with a hand cutter and was electrocuted.

## II.  APPLICABLE STANDARDS

"Summary judgment is proper when the evidence on file demonstrates that there is no genuine issue as to any material fact."  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009) (citing Fed. R. Civ. P. 56(c)).  All facts and reasonable inferences are construed in the light most favorable

4

to the non-moving party.  *Id.*

### III.   ANALYSIS

Alter seeks summary judgment on Shaffer's two-count negligence suit, arguing that it owed no duty to Shaffer.

In response to Alter's motion, Shaffer raised an additional cause of action sounding in strict liability, on which Alter also seeks judgment.

### A.  Negligence - Whether Alter Owed A Duty to Shaffer

"In order to recover on a negligence claim, plaintiff must set out sufficient facts to establish that the defendant owed a duty to plaintiff, that defendant breached that duty, and that the breach proximately caused injury to plaintiff."  *Grillo v. Yeager Constr.*, 387 Ill. App. 3d 577, 590, 326 Ill. Dec. 1002, 900 N.E.2d 1249 (2008) (citing *Buerkett v. Ill. Power Co.*, 384 Ill. App. 3d 418, 422, 323 Ill. Dec. 430, 893 N.E.2d 702 (2008)).  The parties dispute whether Alter owed Shaffer a duty of care (1) as an employer under the retained control exception or (2) as the occupier of premises under the deliberate encounter exception.  Alter also contends it owed no duty based on the doctrine of primary implied assumption of risk.

### 1.   Employer of Independent Contractor - Retained Control Exception

"As a general rule, one who employs an independent contractor is not liable for the acts or omissions of the latter." *Shaughnessy v. Skender Constr. Co.*, 342 Ill. App. 3d 730, 736, 276 Ill. Dec. 687, 794 N.E.2d 937 (2003) (citing *Rangel v. Brookhaven Constructors, Inc.*, 307 Ill. App. 3d 835, 838, 241 Ill. Dec. 313, 719 N.E.2d 174 (1999)).   An exception exists, however, where the employer retains control over the contractor's work:

> One who entrusts work to an independent contractor, but who retains control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (1965).

The Comments to § 414 clarify this principle:

> In order for the rule . . . to apply, the employer must have retained at least some degree of control over the manner in which work is done.   It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or

6

recommendations which need not necessarily be followed, or to prescribe alterations and deviations. . . .  There must be such a retention of a right of supervision that the contractor *is not entirely free to do the work in his own way*.

Restatement (Second) of Torts § 414, cmt. *c* (emphasis added).

Alter argues that it retained no control over Shaffer because it performed no supervision, exercised no safety controls, assumed no contractual duties regarding supervision or safety, and provided Shaffer little to no equipment.  Indeed, Alter's oversight was largely limited to instructing Shaffer & Sons on what equipment it wished to have removed from the Celotex building.  Such general supervision does not justify imposing liability.  *Downs v. Steel & Craft Builders, Inc.*, 358 Ill. App. 3d 201, 207, 294 Ill. Dec. 569, 831 N.E.2d 92 (2005) (finding no retained control where defendant did nothing more than "tell[] the independent contractors where to work and when").

Shaffer concedes these points, but nevertheless asserts that Alter, by refusing to accede to his requests to shut off power to the Celotex building, "retained this portion of the project."  This Court agrees.

7

As explained above, retained control can lead to liability where "the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts § 414, cmt. *c*. Shaffer testified that one of the first steps taken prior to a demolition project is to make sure that the power is off. Indeed, Shaffer brought his own generators to the project on the assumption that power would be shut down. However, Shaffer was unable to follow his standard methods of operation (i.e., using generators and avoiding any contact with live electrical lines) because Alter refused to abdicate control over the electricity and declined Shaffer's repeated requests to turn off the power in the building. As a consequence of this retained control on Alter's part, Shaffer had to abandon his usual practice of shutting down the power and instead devised new methods to test the power lines. Had Shaffer been free to have the power shut down, as was his usual practice, his injury (whether based on improper tracing or not) would not have occurred. As such, construing the evidence in Shaffer's favor, Alter's retention of control over the electricity in the building left Shaffer "not entirely free to do the work in his own way." *Cf. Sutherland v. Barton*,

570 N.W.2d 1, 5-6 (Minn. 1997) (defendant's retained control over electricity insufficient to impose liability under § 414 where the independent contractor specialized in electrical work, determined that electrical work could be performed safely with power turned on, and failed to "insist that [defendant] shut off the power in the plant").  Therefore, summary judgment on this count is denied.[1]

### 2.   Premises Liability - The Deliberate Encounter Exception

The parties' also dispute whether Alter owed Shaffer a separate duty of care as the possessor of land.  *See Clifford v. Wharton Business Group, LLC*, 353 Ill. App. 3d 34, 41, 288 Ill. Dec. 557, 817 N.E.2d 1207 (2004) ("sections 343 and 414 are not mutually exclusive; rather, each one offers an independent basis for recovery").

---

[1]Shaffer's § 414 arguments also stray into the domain of premises liability and suggest that liability should be imposed under the standards set out in § 2 of the Illinois Premises Liability Act, 740 ILCS 130/1 *et seq*. The standard contained in § 2, however, was invalidated in *Best v. Taylor Mach. Works*, 179 Ill. 2d 367, 378, 228 Ill. Dec. 636, 689 N.E.2d 1057 (1997), and has been replaced with the common law duty standard. *Clifford v. Wharton Bus. Group, LLC*, 353 Ill. App. 3d 34, 42 n.3, 288 Ill. Dec. 557, 817 N.E.2d 1207 (2004).

Whether a duty exists is a legal question shaped by public policy and the relationship between the parties. *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 388-89, 235 Ill. Dec. 886, 706 N.E.2d 441 (1998) (citing *Ward v. K Mart Corp.*, 136 Ill.2d 132, 140, 143 Ill. Dec. 288, 554 N.E.2d 223 (1990); *Kirk v. Michael Reese Hosp.* & *Med. Ctr.*, 117 Ill. 2d 507, 525, 111 Ill. Dec. 944, 513 N.E.2d 387 (1987)).  In conducting a duty inquiry, courts must "consider not only the reasonable (1) foreseeability and (2) likelihood of injury, but also (3) the magnitude of the burden on defendant in guarding against injury and (4) the consequences of placing that burden on defendant." *LaFever*, 185 Ill. 2d at 389, 235 Ill. Dec. 886, 706 N.E.2d 441 (citing *Ward*, 136 Ill.2d at 140-41, 143 Ill. Dec. 288, 554 N.E.2d 223).

Despite the presence of four factors, most premises liability cases turn largely on the foreseeability component.  *See Kirk*, 117 Ill. 2d at 526, 111 Ill. Dec. 944, 513 N.E.2d 387; *Clifford*, 353 Ill. App. 3d at 42, 288 Ill. Dec. 557, 817 N.E.2d 1207 ("it is axiomatic that no legal duty arises unless the harm is reasonably foreseeable").  In Illinois, the foreseeability factor of the duty analysis is informed by §§ 343 and 343A of the Restatement (Second)

10

of Torts. *LaFever*, 185 Ill. 2d at 389-90, 235 Ill. Dec. 886, 706 N.E.2d 441.

Section 343 provides:

> A possessor of land is subject to liability for the physical harm
> caused to his invitees by a condition on the land if, but only if,
> he
>
> (a)    knows or by the exercise of reasonable care would discover
>        the condition, and should realize that it involves an
>        unreasonable risk of harm to such invitees, and
>
> (b)    should expect that they will not discover or realize the
>        danger, or will fail to protect themselves against it, and
>
> (c)    fails to exercise reasonable care to protect them against
>        the danger.

Restatement (Second) of Torts § 343.

No duty exists, however, when the injury stemmed from an "open and
obvious" or "known and obvious" danger. *Ward*, 136 Ill.2d at 145-151,
143 Ill. Dec. 288, 554 N.E.2d 223 (adopting § 343A). As § 343A explains:

> A possessor of land is not liable to his invitees for physical harm
> caused to them by any activity or condition on the land whose
> danger is known or obvious to them, unless the possessor
> should anticipate the harm despite such knowledge or
> obviousness.

11

Restatement (Second) of Torts § 343A(1).

Alter argues that this rule absolves it of liability, because the danger of electricity (more accurately, the danger of cutting through power lines) is open and obvious. *E.g.*, *Carroll v. Commonwealth Edison Co.*, 147 Ill. App. 3d 909, 916, 101 Ill. Dec. 321, 498 N.E.2d 645 (1986) ("electricity is an open and obvious danger").

The open and obvious rule, however, is not without exceptions. A major rationale behind § 343A is that landowners cannot foresee that an invitee will fail to notice and avoid an obvious or known danger. *Ward*, 136 Ill. 2d at 147, 143 Ill. Dec. 288, 554 N.E.2d 223 (citing Page Keeton, *Personal Injuries Resulting from Open and Obvious Conditions*, 100 U. Pa. L. Rev. 629 (1952)). Where "the possessor should anticipate the harm despite such knowledge or obviousness," this rationale does not apply and therefore the Restatement provides an exception. Restatement (Second) of Torts § 343A.

The Illinois Supreme Court has recognized two situations (both derived from the Restatement (Second) of Torts § 343A, cmt. *f*) wherein

12

the possessor should anticipate, and therefore guard against, the harm arising from an open and obvious or known danger. *Sollami v. Eaton*, 201 Ill. 2d 1, 15-16, 265 Ill. Dec. 177, 772 N.E.2d 215 (2002); *LaFever*, 185 Ill. 2d at 391, 235 Ill. Dec. 886, 706 N.E.2d 441. The first, adopted in *Ward*, is known as the distraction or forgetfulness exception. *Ward*, 136 Ill. 2d at 149-157, 143 Ill. Dec. 288, 554 N.E.2d 223. The second, adopted in *LaFever,* is the "deliberate encounter" exception. *LaFever*, 185 Ill. 2d at 391-98, 235 Ill. Dec. 886, 706 N.E.2d 441. Only the latter exception is invoked here.

The deliberate encounter exception arises "'where the possessor [of the land] has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.'" *Sollami*, 201 Ill. 2d at 15, 265 Ill. Dec. 177, 772 N.E.2d 215 (quoting Restatement (Second) of Torts § 343A(1), cmt. *f* (1965)). "The focus, in determining whether a hazard is foreseeable, is on the landowner's knowledge or what the landowner should have known." *Buerkett*, 384 Ill. App. 3d at 423, 323

Ill Dec. 430, 893 N.E.2d 702; *see also LaFever*, 185 Ill. 2d at 392, 235 Ill. Dec. 886, 706 N.E.2d 441 (rejecting invitation to "decide foreseeability by measuring the reasonableness of the *entrant's* actions").

Although not necessarily limited to work settings, "[t]he deliberate encounter exception has most often been applied in cases involving some economic compulsion." *Sollami*, 201 Ill. 2d at 16, 265 Ill. Dec. 177, 772 N.E.2d 215.  In such cases, prognostication is straightforward: "individuals will make deliberate choices to encounter hazards when faced with employment concerns, and those encounters are reasonably foreseeable by possessors of property." *Grillo*, 387 Ill. App. 3d at 596, 326 Ill. Dec. 1002, 900 N.E.2d 1249.

Shaffer argues that his case falls within the mainline of deliberate encounter cases (i.e., those based on economic compulsion), because Alter could have expected (and allegedly did know) that Shaffer would have to test, cut, and remove wires in order to complete his salvage project.  In analogous circumstances, Illinois courts have found that the deliberate encounter exception applies.

For example, in *LaFever*, the Illinois Supreme Court found that the defendant could reasonably foresee that the plaintiff, a roll-off driver, would attempt to walk over slippery edge trim in order to perform his task of hauling away waste trim, despite knowledge of the risks of falling.  185 Ill. 2d at 390-97, 235 Ill. Dec. 886, 706 N.E.2d 441.  As such, the court found the deliberate encounter exception applied to the otherwise open and obvious danger.  *Id.*

Even more pertinent is *Grillo*, which applied the deliberate encounter exception "where plaintiff informed defendant of the dangerous condition where he was working [failure to backfill], and defendant had reason to expect that plaintiff would continue working despite the dangerous condition in order to complete his work in a timely manner."  387 Ill. App. 3d at 596, 326 Ill. Dec. 1002, 900 N.E.2d 1249.  *See also Ralls v. Vill. of Glendale Heights*, 233 Ill. App. 3d 147, 155, 174 Ill. Dec. 140, 598 N.E.2d 337 (1992) (reasonably foreseeable that workers would attempt to use earthen incline rather than longer, inconvenient path to reach the door to a building).

Similarly, in *Staples v. Krack Corp.*, the Seventh Circuit, applying Illinois law, reversed a district court's refusal to apply the deliberate encounter exception. 186 F.3d 977, 980-81 (7th Cir. 1999). There, the plaintiff truck driver was loading his truck at defendant's business when a loader, stacking up wood, left a skid protruding from the pile in front of the sole exit. *Id.* at 978-79  The appellate court found that defendant could have foreseen that the plaintiff, in an effort to return with his load in a timely manner, would attempt to move the skid from under the pile. *Id.* at 981.

This case is no different. Shaffer was hired to remove various pieces of equipment from the Old Celotex building. Alter could have foreseen that Shaffer, in performing his task, was likely to come into contact with the electrical wiring, especially in light of Shaffer's requests that the power be shut off. Indeed, evidence suggests that Alter did, in fact, know that Shaffer was testing, cutting, and pulling wiring throughout the building in order to complete the salvage operation. Given Shaffer's economic compulsion to finish the job and evidence suggesting Alter's ability to

16

foresee (and apparent knowledge of) the risk, this Court concludes that the deliberate encounter exception applies.

### 3. The Deliberate Encounter Rule and Assumption of Risk Principles

Alter also asserts that Shaffer is barred from relief by his assumption of the risk of electrocution.[2] "[A]ssumption of risk means that the plaintiff,

---

[2]Though not discussed by the parties, questions exist regarding the extent to which assumption of risk principles apply in the deliberate encounter context. *See Hastings v. Exline* , 326 Ill. App. 3d 172, 176, 260 Ill. Dec. 220, 760 N.E.2d 993 (2001) ("[U]ndeveloped in either the Restatement, *LaFever*, *Ralls*, or for that matter Illinois law generally is what part assumption of risk will play in these circumstances."). Although several Illinois cases have applied assumption of risk to non-economic deliberate encounter situations, *Bonavia v. Rockford Flotilla 6-1, Inc.*, 348 Ill. App. 3d 286, 293- 96, 283 Ill. Dec. 843, 808 N.E.2d 1131 (2004); *Hastings*, 326 Ill. App. 3d at 176-77, 260 Ill. Dec. 220, 760 N.E.2d 993 (2001), other cases have suggested different results where (as here) economic motivation is involved, *Suerth v. Exxon Mobil Corp.*, 2007 WL 2566265, *4-5 (N.D. Ill. 2007). Alter's own suggested rule, that assumption of risk applies (1) in the economic context and (2) even where the only alternative is to forgo employment, seems doubtful in light of Illinois case law, *LaFever v. Kemlite Co.*, 185 Ill. 2d at 393, 235 Ill. Dec. 886, 706 N.E.2d 441 (applying rule regardless of the existence of any "reasonable alternative"), and the Restatement's own examples, *see* Restatement (Second) of Torts § 343a, Illus. 5. Indeed, Alter's rule would largely eviscerate the deliberate encounter exception. Nevertheless, because the parties do not explicitly raise this issue, the Court assumes that assumption of risk principles apply in this context.

17

in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone." *Townsend v. Fassbinder*, 372 Ill. App. 3d 890, 904, 310 Ill. Dec. 470, 866 N.E.2d 631 (2007) (quoting *Vanderlei v. Heideman*, 83 Ill. App. 3d 158, 162, 38 Ill. Dec. 525, 403 N.E.2d 756 (1980)) (quotations omitted).  In particular, Alter relies on primary implied assumption of risk[3], which applies where "'the risk of harm . . . is not created by the defendant but is inherent in the activity which the plaintiff has agreed to undertake.'" *Id.* (quoting *Clark v. Rogers*, 137 Ill. App. 3d 591, 594, 92 Ill. Dec. 136, 484 N.E.2d 867 (1985)).

Whether a particular risk was assumed turns on the plaintiff's subjective awareness of the risk in light of his knowledge, experience, and background. *Boland v. Kawasaki Motors Mfg. Corp., USA,* 309 Ill. App. 3d 645, 653, 243 Ill. Dec. 165, 722 N.E.2d 1234 (2000).  "Whether the plaintiff . . . understands and appreciates [the] magnitude [of the risk] . . . is a question of fact . . . determined by the jury . . . [except] where

---

[3]Because the issue is not disputed, this Court assumes that such a characterization is proper.

18

reasonable men could not differ as to the conclusion."  Restatement (Second) of Torts § 496D, cmt. *e*.  Here, evidence suggests that Shaffer, while understanding that electricity was dangerous, failed to comprehend the magnitude of risk posed by the potential presence of unmarked high voltage lines.  This evidence includes Shaffer's utter lack of any electrical experience, the absence of any high voltage warning signs on the electrical box, Shaffer's testimony that he would not have cut a wire in an electrical box marked as "high voltage," and the fact that Shaffer's electrical tester was woefully insufficient for testing higher voltage wires.  Based on this evidence, a jury could conclude that Shaffer did not subjectively comprehend the magnitude of the risk that he was taking by cutting into the wire in the unmarked high voltage box.[4]  Therefore, summary judgment is denied on assumption of risk grounds.

## B.    Abnormally Dangerous Activity

Shaffer also alleges that Alter should be strictly liable for the harm he

---

[4]No argument was raised as to whether Shaffer's actions were sufficiently "voluntary" and therefore the Court expresses no opinion on that subject.  *See* Restatement (Second) of Torts § 496E.

19

suffered because he was engaged in an abnormally dangerous activity. *See* Restatement (Second) of Torts §§ 519-520. This argument, however, was not raised in the complaint and is largely undeveloped in the Shaffer's brief.

Those problems aside, the claim still fails. Even assuming that scrapping machinery (or electrical work) constitutes an abnormally dangerous activity, it was Shaffer & Sons that carried out the activity, not Alter. Of course, principals cannot escape liability for abnormally dangerous activities merely by employing independent contractors, *e.g.,* Restatement (Second) of Torts § 427A (1977), but these "non-delegation" rules only impose liability with respect to injured third parties, *Apostal v. Oliveri Constr. Co.*, 287 Ill. App. 3d 675, 681-82, 222 Ill. Dec. 884, 678 N.E.2d 756 (1997). Where, as here, the injured party is an employee of an independent contractor who is directly participating in the dangerous activity, the principal is not liable. *Id.* at 682 ("No Illinois case has imposed a nondelegable duty of care on a principal for injuries to the contractor's employee."); *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 940-42 (7th Cir. 1986); *see also* 57A Am. Jur. 2d Negligence § 390 ("[T]he

20

benefit of strict liability does not run to a person participating in the activity deemed to be ultrahazardous."). Therefore, Shaffer's strict liability claim must fail.

## IV.  CONCLUSION

<u>Ergo</u>, this Court GRANTS Alter's motion for summary judgment [d/e 15] regarding the strict liability claim.  The motion [d/e 15] is DENIED with respect to both negligence claims.


IT IS SO ORDERED.

ENTERED:                                          May 14, 2009

FOR THE COURT:                          /s Judge Richard Mills
                                                        United States District Judge

21